ESTEBAN RIVERA ROSARIO ET AL., Appellants, *v.* THE REGISTRAR OF PROPERTY OF HUMACAO, Respondent.

No. 1286. Submitted August 26, 1952.—Decided December 3, 1952.

*F. González, Jr.,* and *Cruz Ortiz Stella,* for appellants. The Registrar appeared by brief.

MR. JUSTICE SIFRE delivered the opinion of the Court.

Appellants herein, some as heirs and successors in interest of Francisca Cintrón Nieves, and others as heirs of Esteban Rivera, brought an action of revendication and for annulment of proceedings against Ramón Meléndez Tabales *et al.,* which was decided by judgment rendered by the then District Court of Puerto Rico, Humacao Section.

By the very judgment the complaint was sustained and defendants were ordered to return to plaintiffs, appellants herein, the property involved in the revendication proceedings; the sale at public auction to Faustino R. Fuertes was declared null and void; respondent was ordered to cancel all the registration entries of said property beginning with the one in favor of Fuertes, and the clerk was likewise ordered, once the judgment became final (*firme*), to issue to that end the corresponding writs. The judgment was affirmed by this Court in *Rivera* v. *Meléndez*, 72 P.R.R. 404. On November 26, 1951, appellants presented to respondent a writ including said judgment, together with a certified copy of the complaint which had been filed in the action of revendication and recorded in the registry pursuant to § 91 of the Code of Civil Procedure. These documents were accompanied by a petition requesting the cancellation of the registration entries as ordered by the trial court, as well as the record in favor of appellants [1] of the property in question. Respondent cancelled the entries but failed to record title in favor of the appellants, and merely entered a marginal note on the writ, on December 13, 1951, stating that the record remained in favor of Esteban Rivera. [2]

On December 28, 1951, appellants presented another petition accompanied by a certified copy of the complaint and of the afore-mentioned writ. These documents were presented

---

[1] Although it does not appear from the Registrar's note (it only appears in the original application and in the briefs submitted by the parties in this proceeding) that in the application of November 26, 1951 the registration of the property in the name of appellants, was requested, we consider it timely to set if forth for a better understanding of this opinion.

[2] The note of December 13, 1951 reads thus:

"The cancellation of the second record was MADE in favor of Faustino R. Fuertes; the third record in favor of Meléndez y Tabales, and the fourth in favor of Meléndez & Meléndez Corporation to which the judgment of the court object of the present ORDER refers, after having examined the certified copy of the original complaint where the property is dscribed, by the NINTH record thereof No. 211 Trip. at folio 75 of Volume 15 of Ceiba; wherefore the first record of that same property in favor of Esteban Rivera is the only in force."

to respondent with a request to record the property in their name. The Registrar returned the same on the following grounds:

"This document, which is a writ issued on November 26, 1951 by Conrado Díaz, Clerk of the District Court of Puerto Rico, Humacao Section, which includes the judgment rendered on March 21, 1950 by the Hon. Francisco Torres Aguiar, Judge of the afore-mentioned court, and affirmed by the Hon. Supreme Court of Puerto Rico on April 23, 1951, appeal No. 10434, is hereby RETURNED without any action being taken thereon, inasmuch as it was recorded when the aforesaid document was originally presented in this registry, complying with the order of said court, and no additional document is being offered in order to make the registration sought. It is the Registrar's opinion that in order to comply with the request contained in the petition submitted to me, appellants must present the corresponding declaration of heirship and the inheritance tax receipts or of exemption, if any, all pursuant to the law."

Appellants felt aggrieved by this note and filed this administrative appeal praying that the note be set aside and the "registration of the judgment presented in the Registry of Property of Humacao" be ordered. They contend that the respondent committed the following error:

"The Registrar of Property of Humacao erred in refusing as a matter of fact, to record the property involved in the revendication in favor of appellants, because 'it is the Registrar's opinion that in order to comply with the petition submitted to him, appellants must present the corresponding declaration of heirship and the inheritance tax receipts or notice of exemption.' "

The appellants' final objective is to obtain a decree ordering the registration of the property in their name.

In the first instance we must decide whether the Registrar's note in effect amounts to a denial of the registration prayed for. If, on the contrary, it does not amount to a refusal to record, the appeal should be dismissed. *Mollfulleda* v. *Registrar of Property,* 19 P.R.R. 950; *González*

v. *Registrar of Property*, 19 P.R.R. 1011; *Jiménez* v. *Registrar*, 62 P.R.R. 522.

It is our opinion that the purpose of said order is to refuse to record the property in appellants' name, since according to the respondent's opinion they should present "the corresponding declaration of heirship and the inheritance tax receipts or of exemption, if any." In effect the order amounts to a denial of the registration prayed for. *Heirs of Franceschi* v. *Registrar*, 39 P.R.R. 665.

We have held that "The failure of the registrar to expressly state in his decision that he denied the recording of the cancellation of the encumbrances, when in point of fact he denied it, does not deprive the appellant of his right to have the action of the registrar reviewed in an administrative appeal." *Land Authority* v. *Registrar*, 65 P.R.R. 481. To hold a contrary view would be tantamount, as it was set forth in said case, to subordinating to the Registrar's own discretion, the right to take an administrative appeal from his decision.

Having settled this issue, we shall proceed to examine that part of the Registrar's note in which he states that in order to record the property in appellants' name, it is necessary to present the corresponding declaration of heirship.

Some of the appellants based their action of revendication on their status of sole heirs and successors in interest of Francisca Cintrón Nieves, and others on their status of sole heirs of ·Esteban Rivera, alleging that as such they were the only owners of the property. The findings on which the judgment rendered in the aforesaid actions is based, show that one of the reasons for ordering the return of said property to appellants was that they had proved their status as such.

It is a well-settled rule in this Court that although there is a special proceeding for the declaration of heirship, where an heir files a suit as such without recourse to said proceed-

ing, he has the right to establish said status in the action and for the purposes thereof. *Morales et al.* v. *Landrau et al.*, 15 P.R.R. 761, *Soriano et al.* v. *Rexach et al.*, 23 P.R.R. 531, *Fortis* v. *Fortis*, 25 P.R.R. 64, *Succession of Rodríguez*, v. *Pérez*, 25 P.R.R. 73, *Sucs. of Casanova & Co.* v. *Ramírez et al.*, 25 P.R.R. 581, *Méndez* v. *Martínez*, 26 P.R.R. 87, *Heirs of Torres* v. *Torres et al.*, 29 P.R.R. 847, *Ginorio* v. *Registrar*, 50 P.R.R. 384, *Heirs of Meléndez* v. *Almodóvar*, 70 P.R.R. 500.

This doctrine is applicable to the action of revendication and in *Morales et al.* v. *Landrau et al.*, *supra*, we set forth the following:

"The plaintiffs, having based their action among other facts on their capacity of heir of Angel Oquendo, without such fact having been admitted by the defendants, they had the right to establish such capacity in this action without the necessity of having recourse therefor to the act relating to special proceedings, although such proof can only be valid and efficient with relation to the defendant in the specific case under consideration, because for general purposes, or when it is sought to obtain a declaration of heirs, which has not been applied for in this action, the provisions of chapter three, of title one, of the act relating to special proceedings, which establish the mode and form of obtaining such declaration, would have to be observed."

Appellants contend that, having established their aforementioned status of sole heirs and successors in interest in the revendication suit, the property recovered must be recorded in their name by virtue of the judgment rendered in said action, without it being necessary to obtain a declaration of heirship as respondent demands. On the other hand, the Registrar urges that it was necessary to establish the aforesaid status in the revendication suit solely for the purpose of said action, and that proof of said status does not entitle appellants to request the registration of the property in their name, inasmuch as it appears from the very judgment that respondent was merely ordered to cancel all the

entries of the property, beginning with the one made in favor of Fuertes, and that by cancelling those entries he complied with the judgment.[3]

We agree with appellants' contention in that they are under no obligation to present to respondent the declaration of heirship demanded by him. We believe that this conclusion is a logical sequence of the doctrine set forth in *Morales et al.* v. *Landrau et al., supra,* and in other cases cited herein, and does not conflict with the restriction of said doctrine to the effect that plaintiffs' right to establish their status of heirs in a contentious suit, is solely effective for the purposes of the particular case under consideration and the parties involved therein, because for general purposes, or for obtaining a declaration of heirship, the parties should follow the provisions of the Law of Special Legal Proceedings which establishes the mode and procedure for obtaining it.

In requesting that the property which was adjudicated to them and which is still recorded in the name of Esteban Rivera, who acquired it while married to Francisca Cintrón Nieves, be recorded in their favor, the appellants are not pretending that their status which was proved in the action of revendication and acknowledged by the lower court, should operate validly as to other persons not parties to the suit. Neither do they pretend to use the proof of said status for general purposes, as would be the case if they should attempt to obtain the registration of a property which belonged to Esteban and Francisca but which is different from the one involved in the revendication suit. Their main interest is that the property that they recovered be recorded in their name, and that the record be made as a direct consequence of the action in which they were the prevailing parties and as ordered in the judgment rendered therein.

---

[3] In one of the briefs respondent states that appellants proved their status of heirs but did not do so regarding the fact that they were the sole heirs. We do not agree with this statement in view of the findings of fact on which the judgment rendered in the revendication is based.

Where we have stated in our decisions that in a contentious suit proof of the status of heirs, unaccompanied by a declaration of heirship, is only valid for the purposes of the action, with relation to the parties in the specific suit involved, and that for general purposes it is necessary to obtain a declaration of heirship pursuant to the provisions of the Law of Special Legal Proceedings, we have not meant to establish a distinction as to the validity of the acknowledgment of said status with respect to the ends and purposes contemplated by the contentious suit, or by the *ex parte* proceeding for the declaration of heirship as the case may be. What we mean is that the acknowledgment of the status of heir made in a contentious suit, without having obtained a declaration of heirship, can not be used for those ends and purposes which do not arise or flow from the action; in other words, we have established a restriction as to the ends for which said acknowledgment may be employed, but in nowise as to the scope and extent that it should have for the legal purposes of the suit.

Revendication stems directly from ownership and judgment can not be obtained unless plaintiffs prove that they possess title. The judgment rendered in favor of appellants by virtue of which they recovered the property necessarily contemplates the acknowledgment that they are the owners precisely under title of sole heirs and successors in interest of Francisca Cintrón Nieves and Esteban Rivera. To refuse to record the property in the name of appellants because the respondent believes that they should present the declaration of heirship pursuant to the Law of Special Legal Proceedings in order to prove the same status recognized to them by the judgment and without which they could not have obtained said judgment in the revendication suit, is to deny validity and effect to such recognition for the purposes of said action.

More than once we have referred to the weight to be accorded to the designation of heirs in an action. In *Soriano et al.* v. *Rexach et al., supra,* we added the following

by way of supplement to a paragraph which we copied from our opinion in *Morales et al.* v. *Landrau et al., supra:*

"And by way of supplement to the paragraph last above quoted we may add that unless some element of time and memory or other exceptional circumstance is involved, there would seem to be no sound reason why documentary evidence submitted to inspected, and passed upon by opposing counsel before its admission, and oral testimony given at the trial upon the merits as between the adverse interests of contending parties, under keen judicial scrutiny sharpened by the struggle between contesting litigants, and subjected to the crucial test of cross examination, should not be regarded as having more intrinsic weight and real probative value and therefore as being even better evidence of the ultimate fact that the mere certified copy of a decree entered in an *ex parte* proceeding for designation of heirship wherein there is no equally alert opposition to the admission of documents and only the parties interested in establishing the fact and their witnesses are examined by their attorney and possibly by the court, but without any participation whatsoever by an adversely interested party."

In *Ginorio* v. *Registrar, supra,* we expressed the same view stating that "It is evident that in an adverse proceeding the defendants or perhaps even the plaintiffs, as the case may be, may have an interest in opposing or not opposing the averments of certain persons alleging themselves to be heirs of a certain supposed predecessor. A trial on an issue of heirship of this kind would be one of the best ways of determining such a fact."

If we should hold that appellant must prove to respondent the capacity in which they appeared and prevailed in the action of revendication, by presenting the evidence required by him, the value of the doctrine laid by this Court in *Morales et al.* v. *Landrau et al., supra,* in *Ginorio* v. *Registrar, supra,* and in other cases cited would be restricted, without any legal justification, to the demonstration and recognition of plaintiff's title in the revendication suit for the purpose of defeating defendant, but without arising

therefrom the rational and logic consequence of making the title recordable. Such doctrine can not be construed in such a restrictive and contradictory manner.

▮ Respondent is in error in contending in support of his note that he was not ordered in the judgment to record the property in favor of appellants. It is true that it was not expressly so ordered. But said judgment bears inseparably the presumption that it contains the juridical truth that appellants are the ones who have title over said property by inheritance and therefore they are entitled to have it recorded in their name. It was not necessary to expressly state said right in order that it should subsist and be recognized.

Independently of what we have stated, the judgment rendered in the action of revendication is a recordable title. *Padilla* v. *Registrar*, 39 P.R.R. 482.[4] It is so by its nature and by the nature of the action in which the judgment was rendered. Said judgment, which is enforceable, is recordable pursuant to the provisions of §§ 2 and 3 of the Mortgage Law.[5]

▮ We shall turn to that part of the Registrar's note in which he demands the presentation of the receipts show-

---

[4] In *Padilla* v. *Registrar, supra,* plaintiff was adjudicated a property which she claimed in an action of revendication in which she proved her status of heir, without presenting a declaration of heirship obtained pursuant to the Act relating to special proceedings and in referring to the judgment rendered adjudicating plaintiff the property object of the action we stated: "Apart from that, there is a title, viz., the judgment award, which is recordable."

[5] It is unnecessary to discuss in this opinion the effect of the registration in connection with persons who could allege a better hereditary right than the one acknowledged to appellants. However, we wish to point out that in *Ginorio* v. *Registrar, supra,* after referring to the import of the acknowledgment of the status of heir in a contentious suit we stated the following: "Even a determination there would only bind the parties to the case. Other alleged heirs might still combat it," and that in *Méndez* v. *Martínez, supra,* referring to the declaration of heirship by *ex parte* proceedings, we stated that: "Being *ex parte,* it is not binding or conclusive on any heir who is not included therein."

ing payment of the inheritance tax, or in its default, proof of exemption.

It appears from the findings of fact supporting the judgment rendered in the action of revendication that Francisca Cintrón Nieves had four children of her first marriage to Belén García; that when Francisca became a widow, she married Esteban Rivera, bearing no children and, as we have stated, while married they acquired the property sued on. Likewise it appears from said findings, that Francisca died on February 15, 1916, leaving as sole and universal heirs, her widower and the four children had in her first marriage to Belén García, two of whom had died, the other two being among the appellants, and that Esteban then married Celestina Rosario, of which marriage they had three children, who were the sole and universal heirs of Esteban when he died on February 20, 1932. Two of the appellants are Francisca's children, ten are her grandchildren and the others are Esteban's children.

When Francisca Cintrón Nieves died, the payment of the inheritance tax was governed by the provisions of Chapter III, Title IX, of the Political Code approved in 1902.[6]

When Esteban Rivera died the provisions of Act No. 99 of October 29, 1925 [7] were applicable to the payment of said

[6] Section 1 of said chapter (§ 368) provided as follows:

"All real property within Porto Rico and any interest therein, whether belonging to inhabitants of Porto Rico or not, and all personal property belonging to inhabitants of Porto Rico which shall pass by will, by intestacy, by inheritance or by any grant whatsoever, made or intended to take effect in possession or enjoyment after the death of the grantor to any person, association, institution or corporation, in trust or otherwise, other than to or for the use of his wife, child, grand-child or person legally recognized as an adopted child of the decedent, shall be subject to a tax as hereinafter provided: *Provided,* that no tax shall be collected upon the property passing to any one heir, legatee, devisee or grantee when the same shall be valued at two hundred dollars or less; and provided, further, that when the value of such property exceeds two hundred dollars, the said two hundred dollars shall be deducted in estimating the taxes thereon."

[7] Section 1 of said Act No. 99 of August 29, 1925, read in part as follows:

130

tax. We are unable to determine which law governed this matter when the ancestors of the grandchildren of Francisca Cintrón Nieves died inasmuch as the record does not show the date of their death.

Appellants maintain that in view of the value of the revendicated property, the failure to present receipts showing the payment of inheritance tax or proof of exemption, should not preclude the registration sought, and in support of this contention they allege that said property was sold for Three Hundred Dollars at public auction in 1917. We do not agree. The inheritance tax is assessed by taking as a basis the value of the estate at the time of the death of the decedent. *Kessler* v. *Domenech, Treas.*, 49 P.R.R. 189, and it is fixed by way of the procedure provided in the applicable statutes. Furthermore, in order to determine the inheritance tax the entire hereditary estate to be declared and not just one particular piece of property should be considered, as has been traditionally required by our legislation, and appraised in the manner provided by law. Not until after the appraisal is made and the tax is computed, may it then be determined whether or not the payment of inheritance tax lies. *Díaz et al.* v. *Registrar of Property,*

---

"*Provided*, That no tax shall be collected upon the property passing to any one heir, legatee, devisee or grantee, other than the spouse, child, grandchild or person legally recognized as the adopted child of the decedent if the said property is valued at two hundred (200) dollars or less; *And provided, further*, That when the value of such property exceeds two hundred (200) dollars, these two hundred dollars shall be deducted on computing the tax on the said property, and the remainder, after making the said deduction, shall be deemed to be the value of the bequest, legacy, donation or inheritance; *And provided, further*, That no tax whatever shall be collected on property left to the wife, child, grandchild or person legally recognized as the adopted son of the decedent, when the value of such property, is one thousand (1,000) dollars or less; *And provided, further*, That where the value of such property left to the wife, child, grandchild or person legally recognized as an adopted child exceeds one thousand (1,000) dollars, said thousand dollars shall be deducted on computing the tax on the aforesaid property, and the remainder, after making the said deductions, shall be deemed to be the value of the bequest, legacy, donation or inheritance."

20 P.R.R. 388, *Riefkohl* v. *Registrar of Caguas*, 27 P.R.R. 342. Apparently, none of this has been done in the case at bar and therefore we do not know what was the property left at the death of Francisca Cintrón Nieves, or at the death of Esteban Rivera or at the time the ancestors of Francisca's grandchildren died nor, of course, its value or amount. The statements made by appellants in the initial petition presented in this proceeding in the sense that the only property left by Francisca was half of the revendicated property, and that the only property left by Esteban was the other half, can not be accepted as a substitute for the proceedings which our statutes have always required in order to prove certain facts which are essential to decide whether or not the payment of the inheritance tax lies.

 Appellants adduce, as an additional ground for setting aside that part of the Registrar's note under consideration, that pursuant to § 368 of the Political Code of 1902, first Section of Chapter III, Title IX of said Code, as well as pursuant to the provisions of Act No. 99 of August 29, 1925, the property inherited by the children were exempt by operation of law from payment of inheritance tax, independently of the value or amount of the property and that said exemption applied to property inherited from the father as well as from the mother, wherefore, the failure to present receipts of said tax or in its default, proof of the exemption, must not preclude the registration sought. In support of this contention they cite the following cases: *Rovira* v. *The Registrar*, 21 P.R.R. 394, and *Cardona* v. *Registrar of San Germán*, 28 P.R.R. 893.

We do not agree. Section 368 of the Political Code of 1902 provided that the property which would pass by inheritance to any person other than the "wife, child, grandchild or person legally recognized as an adopted child of the decedent" was subject to an inheritance tax. The tax exemption as to property inherited by the children was applicable to property inherited from the father and not from the

mother.[8] Act No. 99 of August 29, 1925, did not grant a total or absolute exemption, even in the case of property inherited from the father. It provided in its § 1 that no tax would be collected on property that was "left to the wife, child, grandchild or person legally recognized as the adopted son of the decedent, when the value of such property, is one thousand (1,000) dollars or less." In view of the foregoing, property inherited by the children of Francisca Cintrón Nieves is not exempted from the payment of tax by reason of their status as her children. Nor is the property conveyed

---

[8] The provisions of §§ 368 and 369 of the Political Code of 1902 were equivalent to §§ 94 and 95 of the Revenue Law of January 31, 1901. The Attorney General Mr. Harlan in his opinion delivered on July 18, 1902 construing the Sections which we have just mentioned of the Revenue Law approved in said year stated the following:

"In reply to your communication of the 12th, asking for a construction of sections 94 and 95 of the revenue law in connection with the assessment, for the purpose of inheritance taxation, of two shares in the estate of Andrea Almestica y Espinosa, of Vieques, I have the honor to say that upon a close examination of the two sections it appears that the exemptions contained in the former relate to an estate left by a *husband* for the use of his wife, child, grandchild or person legally 'recognized' as an adopted child; while the affirmative provisions of the latter section relate to a devise or bequest by a *wife*.

"The case stated in your communication comes under section 95; and being a bequest by the mother to her lineal descendants she shares passing to them, whether they be legitimate or illegitimate, are subject to the tax provided in that section. It follows of course that a natural recognized child takes a bequest under section 95 subject to the tax therein provided. Under section 94 property passing by the will of a deceased father to a natural 'recognized' son is exempt from an inheritance tax.

"In other words, it is clear that in these two sections a distinction is made by the legislature between the death of a husband and the death of a wife. Upon the death of the former, who in common experience is the one that provides maintenance for his family, the legislature requires no tax from the estate that passes to his family, apparently upon the principle that the loss of his support by the family is a sufficient reason for the exemption of the family from the burden of taxation. On the other hand, in section 95 the apparent purpose of the legislature was upon the death of a wife to tax the estate passing to the husband and her lineal descendants on the theory that the husband, the source of family maintenance, is still able to support his family, and that the state may justly participate in the inheritance by levying a tax upon it."

See also § 368 of the Political Code as amended by Act 62 of 1916, and § 1 of Act 99 of August 29, 1925.

to the children of Esteban Rivera, inasmuch as, according to what has been set forth, the tax exemption granted by Act No. 99 of August 29, 1925, as to property inherited from her father, was limited to property the value of which did not exceed one thousand dollars, but we have no basis enabling us to determine whether the property is entitled to tax exemption by reason of its value or amount. As regards the predecessors of the grandchildren of Francisca Cintrón Nieves, it is enough to repeat that inasmuch as the time of her death does not appear from the record, we are unable to determine the statute governing the payment of inheritance taxes at the time of her death. We have no ground to conclude that her estate when she died was exempted from the payment of inheritance tax. It is a well-settled rule that tax exemptions can not be presumed or inferred.

The cases of *Rovira* v. *The Registrar, supra,* and *Cardona* v. *Registrar of San Germán, supra,* cited by appellants are clearly inapposite. In the former, the sole heirs were the children and the widow, and in the latter the property in question was adjudicated to a child as heir of his father. In both cases § 368 of the Political Code of 1902 as originally approved, was involved.

█ Appellants urge as additional grounds to convince us that respondent erred in requesting the presentation of the receipts of the inheritance tax or proof of exemption, first, that this is not the case of "judicial decision, ruling or judicial warrant authorized, RENDERED OR ISSUED, in connection WITH THE PARTITION, DISTRIBUTION OR DELIVERY OF SUCH PROPERTY," [9] and second, that appellant's title to the revendicated property is not derived "from the former owner of the property, inasmuch as their title to the property con-

---

[9] Our legislation on inheritance tax has always forbidden the registration of any instrument or judicial decision, ruling or judicial warrant authorized, rendered or in connection with the partition, distribution or delivery of property of any decedent, unless the receipt or receipts of the Treasurer are presented.

sists in the judgment of revendication." As to the first of these grounds, which is in open conflict with the aim pursued by appellants in this proceeding, the judgment invoked as ground for the registration sought is the basis for the recovery of the property. *Riefkohl* v. *Registrar of Caguas, supra.* As to the second, which is clearly in controversy with the theory of the action of revendication, it is unnecessary to discuss the meanings of the word "title." It is enough to say that the judgment which appellants seek to record would not have been rendered in their favor if they had not shown that they were entitled to the revendicated property in the capacity it was adjudicated in the judgment.

For the foregoing reasons, the Registrar's note is set aside insofar as it requires the presentation of a declaration of heirship and affirmed as to the presentation of receipts showing the payment of inheritance tax or, in its default. proof of exemption.